IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Criminal No. 3:14-CR-210-D(08) |
| | § | |
| VICTOR ANDERSON, aka | § | |
| "OLD SCHOOL," | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Victor Anderson, aka "Old School" ("Anderson"), appeals the magistrate judge's detention order directing that he be detained pending trial.[1]  Following *de novo* review of the evidence presented at the hearing,[2] and for the reasons that follow, the court finds by clear and convincing evidence[3] that no condition or combination of conditions will

---

[1]Anderson's notice of appeal should be treated as a motion under 18 U.S.C. § 3145(b) to revoke or amend the magistrate judge's detention order.

[2]"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).  The court's review of the record developed before the magistrate judge is an appropriate procedure to comply with that obligation. *See, e.g., United States v. Farguson*, 721 F. Supp. 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.).

[3]The court applies a clear and convincing evidence standard in determining that no condition or combination of conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(f)(2) ("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing

reasonably assure the safety of the community if Anderson is released on bond.[4]  The court therefore orders that Anderson be detained pending trial pursuant to 18 U.S.C. § 3142(e).

I

Anderson is charged by indictment with one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; five kilograms or more of a mixture containing a detectable amount of cocaine, a Schedule II controlled substance; and a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 846; and one count of conspiracy to commit robbery affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1951(a).[5]  Following Anderson's arrest, the government moved to detain him, both as a flight risk and as a danger to the community.

The magistrate judge conducted a detention hearing at which detective Michael Scott Reuler ("Det. Reuler") testified.  Det. Reuler is assigned to the Gang Unit of the Dallas Police Department and works on special assignment for the Safe Streets Gang Task Force of the FBI ("Task Force").  According to Det. Reuler, during the course of a long-term

_____

evidence.").

[4]Because the court is ordering Anderson detained on this basis, it need not decide whether he is a flight risk.  *See Fortna*, 769 F.2d at 249 ("[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient [to detain a defendant without bond]; both are not required.").

[5]The reference to 18 U.S.C. § 1951(a) is found in the caption of Count Two.  *See* Indictment at 10.  The indictment also contains a criminal forfeiture allegation. *Id.* at 13-14.

- 2 -

investigation that included Title III wire intercepts and physical surveillance of the Goon Squad drug trafficking organization, Task Force agents learned that the operations of the organization were as follows. Members of the Goon Squad, led by codefendants Hilberto Ibarra, aka "Gilberto" ("Hilberto") and Cesar Ibarra, targeted high-level narcotics traffickers for robbery, burglary, or other acts of violence to obtain narcotics and redistribute them at a profit. Before attempting to rob or burglarize a potential target, Goon Squad members engaged in months of surveillance during which they placed GPS tracking devices on their targets' vehicles to identify stash house locations where drugs and proceeds from the drug sales were stored. Goon Squad members also surveilled law enforcement officers by following unmarked vehicles.

The Goon Squad had three levels of operation: suppliers, purchasers, and redistributors. Det. Reuler testified that Anderson was a redistributor, meaning that he purchased distribution amounts of drugs from purchasers such as Hilberto and then resold smaller amounts of these drugs as a "street-level" dealer. Det. Reuler also testified that Anderson was a "multipound marijuana customer" of Hilberto, and that Task Force agents had intercepted a telephone call in which Anderson asked Hilberto for 14 grams of methamphetamine and 14 grams of cocaine. Task Force agents believe Anderson operates a drug house on Polly Street in South Dallas, where he was arrested. Task Force agents learned through intercepted telephone calls that Anderson had actively participated in the Goon Squad's reconnaisance and surveillance efforts, identifying at least one specific drug house to target, providing Hilberto with information on the targeted drug house, and

encouraging Hilberto to rob this particular target to obtain narcotics.

Anderson has an extensive criminal history that includes burglary, forgeries, assaults, family violence, burglary of a motorcycle, assaults causing bodily injury, driving with a suspended license, robbery, possession of marijuana, and possession of controlled substances.  Det. Reuler testified that no work history for Anderson was found with the Texas Workforce Commission.

Anderson's common law wife, Robin Smith ("Smith"), testified that, for the past two years, Anderson has lived with her and her two teenage daughters at their home on Polly Street; that Anderson has been an "excellent" father figure to her daughters and that he spends all of his time with her, his mother, or his grandchildren; and that she suffers from emphysema, Anderson's mother is disabled, and Anderson divides his time caring for his mother and Smith.  Smith testified that, although Anderson previously worked at a Mini Mobile, he had not worked during the five years she has known him, but he did receive social security income and occasional income from landscaping; that if Anderson were released from custody, he would be free to live with her and she would be willing to act as third-party custodian or a person who would be responsible for his whereabouts and for ensuring that he checks in with Pretrial Services; and that she had no knowledge of any prior convictions for robbery, burglary, or assault, that Anderson does not sell drugs, does not store drugs in her house, and that Anderson did not know any of the codefendants and, in fact, had never seen any of the codefendants who were present in the courtroom on the day of the detention hearing.

- 4 -

Following the hearing, the magistrate judge ordered Anderson detained without bond pending trial, finding that the offense conduct and Anderson's role, Anderson's extensive criminal history, and public records suggesting that Anderson has never had any legitimate employment established, by clear and convincing evidence, that there is no condition or combination of conditions that would reasonably assure the safety of the community and Anderson's appearance as required.  Anderson now seeks review of the detention order.

II

A

An individual shall be released pending trial unless a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1). Anderson is charged with a violation of the Controlled Substances Act, 21 U.S.C. 801 *et seq.*, that is, the offense of conspiracy under 21 U.S.C. 846, punishable under 21 U.S.C. § 841(b)(1)(A) by imprisonment for a period that "may not be less than 10 years."  Under the Bail Reform Act, the existence of probable cause—here, the grand jury indictment—to believe that Anderson committed this offense creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Anderson as required and the safety of any other person and the community.  *See* 18 U.S.C. § 3142(e)(3) and (f)(1)(C).  "The presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion."  *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).  The mere production of evidence, however, does not completely

rebut the presumption.  In making its ultimate determination, "the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."  *Id*. at 798-99.

B

Because an indictment provides probable cause that a defendant committed an offense, *see United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987), Anderson's indictment for violating 21 U.S.C. § 846 (punishable under 21 U.S.C. § 841(b)(1)(A)) is sufficient to trigger the statutory presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of any other person and the community.  *See Trosper*, 809 F.2d at 1110 (holding that presumption was properly applied to defendant upon proof that he had been indicted under 21 U.S.C. § 846).

C

The court holds that Anderson has adduced sufficient evidence to rebut the presumption of danger to the community.  *See id.* ("[T]he burden imposed on the defendant is the production of evidence supportive of the point for which it is offered.").  During the hearing, Anderson introduced evidence that supports the inference that he will not engage in drug trafficking if released on bail.  On cross-examination of Det. Reuler, Anderson established that he was not a leader or organizer of the Goon Squad, that Task Force agents did not know whether Anderson had ever obtained the quantities of drugs he asked for on the intercepted telephone call, and that there was no evidence that Anderson knew the drugs he asked for were coming from Mexico.  In addition, Anderson established that he was not in

possession of a weapon at the time of his arrest, and no warrant was obtained to search his residence at the time of his arrest. This evidence rebuts Anderson's alleged intentional involvement with the Goon Squad organization and the criminal activity it conducted. As such, the rebuttal evidence supports the premise that Anderson will not continue to engage in drug trafficking activities if he is released.

D

Anderson contends that if the court could be shown a "location photograph" that he maintains, on information and belief, resided on a witness' phone that was not permitted past the security checkpoint on the day of the detention hearing, "he would be released." D. Not. of Appeal 1. He suggests that the court consider this photograph by way of additional evidence, and he offers to submit the photograph for the court to determine whether it would be relevant to a decision that the court might make.

The court cannot discern from its review of the hearing evidence that the "location photograph" in question has any relevance to the issues presented. No efforts were made to introduce any photographic evidence during the hearing, and neither Anderson's attorney nor any of the witnesses who testified during the hearing mentioned the existence of any such photograph or brought to the magistrate judge's attention that evidence existed on a witness' phone. Moreover, it is not apparent to the court that this photograph that allegedly resides on the phone of an unidentified witness would have any bearing on the issues in this case. Accordingly, the court in its discretion declines to consider Anderson's "location photograph" evidence. *See, e.g., United States v. Dominguez*, 783 F.2d 702, 708 n.8 (7th Cir.

1986) (leaving to the "district judge's sound discretion the question of whether, and if so how, additional evidence should be taken on remand" of a § 3145(b) hearing); *United States v. Shaker*, 665 F. Supp. 698, 704 (N.D. Ind. 1987) ("[I]n exercising its authority under § 3145(b), the decision whether to hold an oral hearing and receive additional evidence rests in the court's discretion.").

E

Although Anderson has adduced sufficient evidence to overcome the rebuttable presumption against release, the court finds from clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. "The risk of continued narcotics trafficking on bail constitutes a risk to the community." *Hare*, 873 F.2d at 798. Despite the fact that Anderson rebutted the presumption of danger to the community, the presumption still carries evidentiary weight. *Id*. at 798-99. The government produced clear and convincing evidence that there is a risk of continued narcotics trafficking if Anderson is released on bail. Anderson has been identified by the Task Force as a participant and coconspirator in a major drug trafficking organization from which the Task Force has seized a considerable amount of drugs and numerous weapons. Telephone conversations have been intercepted between organization leader Hilberto and Anderson evidencing Anderson's knowing involvement and participation in the organization, including conversations about Anderson's purchase of narcotics and discussions during which Anderson identified and provided information regarding a potential future target. The government's evidence shows that Anderson has had a significant role in

this narcotics operation and very likely would continue to engage in illegal drug trafficking if released.

The court also finds that the evidence of Anderson's family ties to the Dallas area does not rebut the presumption of danger to the community, because it does not support Anderson's position that he will not continue to traffic in drugs if released on bail. *See United States v. Munoz*, 983 F.2d 232, 1993 WL 4677, at *3 (5th Cir. Jan. 7. 1993) (unpublished table decision) (holding that testimony about family ties to the area "shed[s] no light on the risk that [defendant] would continue to deal in drugs").  Nor does Anderson's evidence that he has a legitimate source of income—his disability check—persuade the court that he will not continue to traffic in drugs if released on bail.  In fact, Smith testified that even with this disability check, she, Anderson, and her two daughters barely make it. Similarly, testimony that Smith would be willing to assist Anderson as a third-party custodian likewise fails to support Anderson's argument that he does not pose a danger to the community.  If Smith actually believes the testimony she gave at the detention hearing, she appears to be in complete denial of Anderson's criminal activities, despite substantial evidence that he was involved in the Goon Squad, which, based on the quantities of drugs and money involved, is a major drug trafficking organization.  As such, her assurances do not persuade the court that Anderson will not continue to traffic in drugs, if released.

After considering all the factors set forth in § 3142(g), the court finds by clear and convincing evidence that Anderson is likely to be a danger to any other person and the community unless detained pending trial.

III

Accordingly, Anderson's June 12, 2014 motion for revocation or amendment of the magistrate judge's detention order is denied.  The court orders that Anderson be held without bond pending the trial of this action as follows.  He is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  He is to be afforded reasonable opportunity for private consultation with his counsel.  By order of this court, to be issued in the future, the person in charge of the corrections facility in which Anderson is confined is to deliver him to a United States Marshal for the purpose of appearing in connection with any court proceeding.

**SO ORDERED.**

June 18, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE